(No. 49886

McLEAN TRUCKING COMPANY *et al.,* Appellants, v. THE INDUSTRIAL COMMISSION *et al.*—(Mozelle French *et al.,* Appellees.)

*Opinion filed September 19, 1978.*

352

Musschoot, Womack & Galich, of Chicago (Arthur R. Musschoot, James W. Womack and Andrew A. Galich, of counsel), for appellants.

J. Michael Madda, of Chicago, for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

McLean Trucking Company (hereafter McLean) appealed directly to this court under Rule 302(a) (58 Ill. 2d R. 302(a)) from a judgment of the circuit court of Cook County confirming the Industrial Commission's award of compensation to the claimant, Mozelle French, for her husband's death while he was in McLean's employ.

The decedent, Henry French, had been employed by McLean as an over-the-road trucker for approximately three years prior to his death. On September 23, 1974, he had breakfast at home before leaving for work and

appeared, his wife testified, to be in good health. According to his log book, the decedent then drove a McLean's semitrailer truck from Chicago to St. Paul, Minnesota. The truck was equipped with power brakes, but did not have power steering. He arrived in St. Paul after a 9-hour drive, and laid over for 21 hours. At 8 p.m. on September 24, the decedent began his return trip to Chicago. He drove through the night, stopping once in Milwaukee, where he stayed from 3 a.m. to 4 a.m. He arrived at McLean's dispatch office in Chicago at approximately 6 a.m. There he talked with a supervisor for 15 to 20 minutes while having a cup of coffee. The supervisor testified that the decedent appeared to be in good spirits at that time.

The decedent drove his own car home, arriving at 7 a.m. He spoke briefly with his wife, who testified that he looked very drawn and tired. He went to an upstairs bathroom, but minutes later he came downstairs, exclaimed "Call the rescue squad," and collapsed. He was at once taken to a hospital, and he died shortly thereafter. His son testified that he telephoned McLean and informed a supervisor that his father had passed away that morning at the hospital. No autopsy was performed.

Several issues are raised by the respondent. The first is whether McLean was given notice of the accident as required by section 6(c) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.6(c)). McLean contends that the son's phoning McLean and simply advising of his father's death did not constitute notice, and that the holdings in *Fenix-Scisson Construction Co. v. Industrial Com.* (1963), 27 Ill. 2d 354, and *Ristow v. Industrial Com.* (1968), 39 Ill. 2d 410, support that conclusion. We do not agree. In *Fenix-Scisson,* the claimant's wife telephoned his employer within the statutory time prescribed for notice, but told him only that her husband was in the hospital and that he had requested that the employer visit him so that they could discuss a

business matter. The employer was not informed that the claimant had been injured by a falling board in the course of his employment, although of course the cause of his injury was known to the claimant and to his wife, it may be assumed. *Ristow* held in a factual setting quite different from the one here that the giving of notice within 45 days of the accident is jurisdictional, and that there is a conclusive presumption of prejudice when the employer has not been notified. The facts here are distinguishable from those in *Fenix-Scisson,* where the employer was not made aware of facts then known to the claimant, and from those in *Ristow,* where there was a failure to give notice of any kind whatsoever within the statutory period.

Section 6(c)(3) of the Act provides in part that "[n]o defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings on arbitration or otherwise by the employee unless the employer proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy." (Ill. Rev. Stat. 1973, ch. 48, par. 138.6(c)(3).) The provision has been liberally construed, but of course only to an extent consistent with protecting the employer against unjust or fraudulent claims. (*Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137, 143; *Thrall Car Manufacturing Co. v. Industrial Com.* (1976), 64 Ill. 2d 459, 466-67; *United States Steel Corp. v. Industrial Com.* (1964), 32 Ill. 2d 68, 75; *Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32, 41; *Quaker Oats Co. v. Industrial Com.* (1953), 414 Ill. 326, 336; *Raymond v. Industrial Com.* (1933), 354 Ill. 586, 592.) While the employer here was not notified of the cause of death, which was then unknown, the decedent's son phoned McLean and informed a supervisor of his father's death within a few hours after the decedent had completed his tour of duty. Thus, McLean was given notice of all facts then known to the claimant. As was stated by this court in *Raymond v. Industrial Com.* (1933), 354 Ill. 586, 594:

"All the facts were known equally by both parties, and it is difficult to perceive any just theory upon which the employee would be bound to draw the correct medical inferences from those facts and the employer be excused therefrom." McLean was also aware of the nature of the decedent's work and the type of stress involved, as well as the lengthy journey just completed by the decedent.

The notice given here was as specific as it could be under the circumstances. The notice requirement cannot be unreasonably construed so as to compel the impossible —to require a claimant to give notice of what he does not know. This court has consistently upheld the adequacy of incomplete notices where the defect consisted of a failure to inform the employer of facts unknown at the time to the claimant. (*Andronaco v. Industrial Com.* (1972), 50 Ill. 2d 251, 257; *Republic Steel Corp. v. Industrial Com.* (1962), 26 Ill. 2d 32, 41; *Quaker Oats Co. v. Industrial Com.* (1953), 414 Ill. 326, 337; *Raymond v. Industrial Com.* (1933), 354 Ill. 586, 593; *Chicago Rawhide Manufacturing Co. v. Industrial Com.* (1920), 291 Ill. 616, 621.) In any event, the employer has the burden of proving that he has been unduly prejudiced by a defective or inaccurate notice (*Raymond v. Industrial Com.* (1933), 354 Ill. 586, 592), and no factual prejudice here has been shown or even claimed. Considering the circumstances (1920), we hold that notice was given within the meaning of the Workmen's Compensation Act.

We do not consider that the action of the arbitrator in admitting the death certificate of the decedent into evidence at the hearing constituted reversible error. Because the fact and date of the decedent's death were stipulated, McLean contends that it was error to admit the certificate, relying on *People v. Fiddler* (1970), 45 Ill. 2d 181. The certificate indicated the cause of death to have been myocardial infarction. In *Fiddler*, a death certificate was admitted into evidence at a jury trial for murder, and

it was the prosecution's only direct evidence as to the cause of the victim's death. But here the record shows clearly that the arbitrator said he was admitting the certificate only to establish the fact of death, and not as evidence of the cause of death. While its admission was unnecessary and well may have been erroneous, we cannot say under the circumstances that McLean sustained prejudice because of it.

The last question raised is whether the finding of the Industrial Commission that the decedent died as the result of an accident arising out of and in the course of his employment was contrary to the manifest weight of the evidence. A study of the record persuades us that it was not.

Responding to a hypothetical question, the claimant's medical expert, Dr. Nathaniel Greenberg, gave his opinion that "the work activities resulting from the long round trip resulted in an acute myocardial infarction, which produced this man's death." He said on cross-examination that the concentration and maneuvering required in driving a heavy truck over a long period of time was "unequivocal evidence of physical and mental stress." He stated that the degree of stress is markedly higher under those circumstances than under the circumstances involved in driving a small car for a short period of time. When asked to pinpoint the time when the infarction occurred, Dr. Greenberg testified that "[o]ne would be reasonably secure in stating that it occurred within a number of hours of the time of death." He testified that in the vast majority of cases of nontraumatic sudden death, death is caused by acute myocardial infarction or heart attack, and that there may be no clinical signs whatsoever to signal its onset.

An internist for McLean, Dr. William Buckingham, testified before the arbitrator that in his opinion the decedent's death was not related to his employment. At the hearing on review before the Commission, Dr. Harold

Steinberg, an internist, testified for McLean that he assumed the decedent had probably sustained a myocardial infaction, but did not believe the death to have been work-related.

A claimant need not negate every other possible cause of death to establish death by heart attack as a legitimate inference from the evidence. (*Beloit Foundry v. Industrial Com.* (1976), 62 Ill. 2d 535, 539; *Field Enterprises v. Industrial Com.* (1967), 37 Ill. 2d 335, 339.) Where there is conflicting medical testimony, it is axiomatic that it is for the Commission to decide which testimony is to be accepted. See *County of Cook v. Industrial Com.* (1977), 68 Ill. 2d 24, 30; *City of Chicago v. Industrial Com.* (1970), 45 Ill. 2d 350, 353; *Avis Hotel v. Industrial Com.* (1968), 41 Ill. 2d 54, 58-59; *Quaker Oats Co. v. Industrial Com.* (1953), 414 Ill. 326, 335.

The claimant's recovery here should not be defeated by the circumstances that the myocardial infarction manifested itself after the decedent had left the terminal. "If a strain occurs during employment hours which produces no symptoms, and claimant suffers a heart attack as a result some time after working hours, the injury is compensable." (1 A. Larson, Workmen's Compensation sec. 29.22 (1978).) In numerous instances awards have been upheld where the actual heart attacks occurred after the employees had left their places of work and gone home. See *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10; *Sohio Pipe line Co. v. Industrial Com.* (1976), 63 Ill. 2d 147; *Andronaco v. Industrial Com.* (1972), 50 Ill. 2d 251; *Avis Hotel v. Industrial Com.* (1968), 41 Ill. 2d 54; *Gould National Batteries, Inc. v. Industrial Com.* (1966), 34 Ill. 2d 151; *Clifford-Jacobs Forging Co. v. Industrial Com.* (1960), 19 Ill. 2d 236.

The evidence here was that the decedent just prior to his fatal attack had completed the final leg of a round trip between Chicago and St. Paul. The trip was made in a large

tractor-trailer not equipped with power steering, and under nighttime driving conditions. The decedent stopped only once, for an hour, during the 10-hour trip. He appeared to his wife to be very drawn and tired when he arrived home. He collapsed and died almost at once.

It was for the Commission to draw reasonable inferences from the evidence, both direct and circumstantial, and a court will not disregard such inferences simply because others might also have been drawn. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 19; *Beloit Foundry v. Industrial Com.* (1976), 62 Ill. 2d 535, 539-40.) We cannot say that the finding of the Commission was contrary to the manifest weight of the evidence. For the reasons given, the judgment of the circuit court of Cook County confirming the decision of the Industrial Commission is affirmed.

*Judgment affirmed.*