(No. 53233

JAMES R. ANSELL, Appellant, v. THE INDUSTRIAL
COMMISSION *et al.*—(Godfrey Dry Wall, Appellee).

*Opinion filed March 31, 1981.—Rehearing
denied June 4, 1981.*

Londrigan & Potter, P.C., of Springfield (Alexandra de Saint Phalle, of counsel), for appellant.

Heyl, Royster, Voelker & Allen, of Springfield (Gary M. Peplow and John A. Ess, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The principal and controlling question on this appeal is whether the finding of the Industrial Commission that the injuries to James R. Ansell, the petitioner, did not arise out of and in the course of his employment was contrary to the manifest weight of the evidence.

In a Workmen's Compensation Act case (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*), the burden is on the party seeking an award to prove by a preponderance of the evidence the elements of the claim, and in particular the requirement that the injury complained of arose out of and in the course of employment. It is axiomatic that the Commission is to determine the facts and may draw all reasonable inferences from the evidence. (*Illinois Institute of Technology v. Industrial Com.* (1977), 68 Ill. 2d 236, 246.) It is the Commission's function to pass on the credibility of witnesses, and its findings will not be disturbed unless they are contrary to the manifest weight of

the evidence. (*Thrall Car Manufacturing Co. v. Industrial Com.* (1976), 64 Ill. 2d 459, 464.) The circuit court of Sangamon County confirmed the Commission's finding here.

The petitioner was injured on September 18, 1975, when he drove his pickup truck into the rear end of another vehicle when proceeding from Eureka to Springfield. At the time he was employed by Godfrey's Dry Wall of Springfield as a drywall finisher. He was paid by the hour and in addition was paid $80 a month for the use of his truck to transport coworkers, tools and materials between Godfrey's office and the jobsite. On the date of the accident, the petitioner and other Godfrey workers were at a jobsite in Eureka, which is approximately 100 miles north of Springfield. He testified that he arrived at the site at about 8 a.m. and that he worked until about noon, when he and Michael Chastain, a fellow employee, went to lunch at a nearby combination tavern and restaurant. He said that he was there until about 2:30 p.m., during which time he drank four beers. Another witness and coworker, Tim Allen, testified that the petitioner had left the jobsite between 11 a.m. and noon and said that when he left the site between 3 and 4 in the afternoon, the petitioner had not returned. Chastain said that the petitioner drank six or seven beers at the tavern and that he and the petitioner bought a 12-pack of beer to take with them when they left the tavern. Chastain testified that the petitioner drank two more beers between the time he left the tavern and the time the petitioner drove into the other vehicle. Another witness, Ralph Olson, who was employed by another contractor, testified that he had seen Ansell and Chastain at the tavern at about 3:45 in the afternoon, that he was loud and boisterous and took a glass and a bottle of beer with him when he and Chastain left with the 12-pack of beer. Olson said that he told Chastain that he should drive because he did not think that the petitioner was in a condition to drive. Chastain did

drive the petitioner's truck on leaving the tavern but was asked to turn over the driving to the petitioner because he had been driving too slowly. The petitioner stated that when he and Chastain returned to the jobsite to return to work they found that their coworkers had left the job. He testified that they then gathered up their tools and left Eureka to return to Springfield.

James Godfrey, the employer, testified that he had instructed his men not to drink on the job and that he was aware that sometimes they did drink at lunch. He said that in the past he had reprimanded the petitioner for drinking and had admonished him not to drink at lunch.

A State trooper testified that the petitioner's pickup truck had rear-ended a Chevrolet automobile and then had struck a utility pole. The people in the lead car were not seriously injured. He said there was a strong odor of alcohol on the petitioner's breath and expressed his opinion that the truck had been traveling at a speed of from 80 to 90 miles an hour. The employer introduced an evidence deposition of Larry Leesman, who had testified over objection that he had seen a pickup truck swerve in front of him at a high rate of speed about 20 miles north of the scene of the accident. He declared that the pickup truck was the same truck that he saw later at the scene of the accident.

Chastain had testified that the petitioner appeared to be able to work when Ansell and he returned to the jobsite from the tavern, but the employer's objection to this testimony was sustained and it was stricken.

The petitioner contends that the finding of the Commission that his injuries did not arise out of or in the course of his employment was contrary to the manifest weight of the evidence. He argues, too, that the arbitrator and the Commission erred in admitting the State trooper's accident-reconstruction testimony, and in striking Chastain's testimony that the petitioner was capable of working when he left the tavern. There also was error, he says, in

admitting the deposition testimony that the petitioner had been driving recklessly 20 miles from the scene of the accident.

We consider that a review of the entire evidence, which parenthetically we observe with approval was objectively and fairly summarized in the petitioner's brief, defeats any claim that the Commission's finding was contrary to the manifest weight of that evidence. An employee, who has deviated from his performance of duty, may of course return to the course of employment, but on the record here the Commission certainly could have not unreasonably found that the petitioner, after quitting work for lunch, never did return to his employment. A finding that he did abandon his employment would certainly not be contrary to the manifest weight of the evidence. Our conclusion is not altered by the petitioner's claims of evidentiary error. Regarding the trooper's testimony and the testimony by Larry Leesman of the petitioner's negligent or reckless driving 20 miles from the scene of the accident, it is of course true that contributory negligence does not bar recovery under the Workmen's Compensation Act. We cannot say, however, that there was an abuse of discretion in admitting the testimonies because, in conjunction with the other evidence, the Commission may well have regarded the testimonies as evidence that the petitioner was not acting in the course of his employment. We do not consider that there was error of substance, if at all, in striking the testimony of Chastain that in his opinion the petitioner was able to work. A witness may of course express an opinion as to whether a person was or was not intoxicated. Even if we assume that the stricken testimony of Chastain that the petitioner was able to work was to be considered equivalent to stating that he was not intoxicated, we believe there was no error in striking the testimony. We consider that the record shows that the petitioner never did in fact return to the course of his employment, and whether he was capable of

doing so or not was not relevant under the circumstances here.

For the reasons given, the judgment of the circuit court of Sangamon County is affirmed.

*Judgment affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.